**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION at ASHLAND**

**Civil Action 06-125-HRW**

**NATIONAL GENERAL INSURANCE COMPANY**
**d/b/a GMAC INSURANCE,**

**PLAINTIFF,**

**v.** **MEMORANDUM OPINION AND ORDER**

**LINDA FELTY,**
**WILLIAM FELTY,**
**ALONZO BURTON,**
**and**
**OUR LADY OF BELLEFONTE HOSPITAL,** **DEFENDANTS.**

This matter is before the Court upon Plaintiff National General Insurance Company's (hereinafter "NGIC") Motion for Summary Judgment [Docket No. 25]. Specifically, NGIC contends that it has no contractual obligation to provide Defendant Linda Felty with a defense or indemnification in the legal action Alonzo Burton v. Our Lady of Bellefonte Hospital, Inc., v. Linda Felty, et al, Commonwealth of Kentucky, Greenup Circuit Court, Civil Action No. 02-CI-0064.

Defendants failed to respond within the time prescribed by Rule 7.1( c)(1) of the Joint Local Rules for the Eastern and Western District of Kentucky. Nor did Defendants request additional time in which to do so.

On February 2, 2007, the undersigned entered an Order directing Defendants to show cause why the Plaintiff's motion should not be sustained and Plaintiff granted judgment as a matter of law [Docket No. 26].

In response to the Show Cause Order, Defendant Our Lady of Bellefonte Hospital advised the Court that it would not file an opposing memorandum to Plaintiff's motion [Docket No. 27]. However, to date, Defendants Linda Felty and William Felty, the policyholders, have not responded to the motion or the Court's Order.

If for no other reason, it would be entirely proper to grant the Plaintiff's dispositive motion based on Defendants' failure to respond thereto as required by the Joint Local Rules of the Eastern and Western Districts of Kentucky. The Court has reviewed the Plaintiff's motion and the record, nevertheless, and finds that the Plaintiff's motion should be sustained on its merits as well.

This case arises from a slip-and-fall on the premises of Our Lady of Bellefonte Hospital. On December 31, 2001, Linda Felty drove her father, Alonzo Burton, to the emergency room at Our Lady of Bellefonte Hospital. There had been snowfall and, according to Mr. Burton, there was snow on the ground. [Deposition of Alonzo Burton, pp. 23-24, Exhibit 1 to Docket No. 25]. Upon arriving at the hospital, Mr. Burton exited his daughter's car. He testified that he

was able to stand in an area between the car and an embankment. [Deposition of Alonzo Burton, pp. 23-24, Exhibit 1 to Docket No. 25]. Mr. Burton stated that, first, he stood facing the embankment but then turned in order to close the car door. While closing the door, Mr. Burton fell backwards down the embankment. Mr. Burton recalled the fall:

> And I was standing there. When I shut that door, my foot went right under that car where it had ice in under the car there, you know, where - - in that little snow, and I went over that hill backwards.

[Deposition of Alonzo Burton, pp. 25-26, Exhibit 1 to Docket No. 25].

Mrs. Felty corroborated her father's recollection of the fall; she testified that he fell in snow which had accumulated along the curb as a result of plowing. [Deposition of Linda Felty, pp. 13-15, Exhibit 2 to Docket No. 25].

As a result of the fall, Mr. Burton suffered injuries. He subsequently filed suit against Our Lady of Bellefonte Hospital in Greenup Circuit Court, alleging that the hospital maintained its premises in an unsafe and dangerous manner. *See* Alonzo Burton v. Our Lady of Bellefonte Hospital, Inc., v. Linda Felty, et al, Commonwealth of Kentucky, Greenup Circuit Court, Civil Action No. 02-CI-0064. The hospital filed a Third Party Complaint against several individuals, including Linda Felty [Exhibit 4 to Docket No. 25]. The hospital alleged that Ms.

Felty was negligent in "choosing to park her car motor vehicle on a snow-dusted, sloped driveway in an area that was specifically designated as a no parking zone and adjacent to an embankment." [Exhibit 4 to Docket No. 25].

Ms. Felty sought a defense and indemnification in the state court action from NGIC, pursuant to a personal automobile insurance policy, Policy No. 1017142A011 [Exhibit 2 to Docket No. 1]. NGIC has provided Ms. Felty with a defense while proceeding in this Court, seeking a declaratory judgment in this Court that, pursuant to the terms of the policy, it is not obligated to do so [Docket No. 1]. NGIC argues that the automobile insurance policy in question does not cover the damages arising from the incident which forms the basis of the aforementioned action. Thus, NGIC maintains it is not obligated to provide Ms. Felty with a defense and, accordingly, it is entitled to judgment as a matter of law.

Under Rule 56 of the Federal Rules of Civil Procedure the Court must view the evidence in the light most favorable to the nonmoving party, in this case, the Defendants . Thus, when examining the record the Court will resolve doubts and construe inferences in favor of the Defendants in an effort to determine if any genuine issues of material fact exist. However, in a series of decisions commonly referred to as the "trilogy", *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Anderson*

*v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986), the U.S. Supreme Court emphasized that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. In short, the "trilogy" requires the nonmoving party to produce specific factual evidence that a genuine issue of material fact exists.

An insurer has no duty to defend where it is clear from the complaint that coverage is unambiguously excluded from the claim at issue. *Lenning v. Commercial Union Insurance Company*, 260 F.3d 574, 581 (6th Cir. 2001). Yet, insurers have an obligation to defend if there is an allegation "which potentially, possibly or might come within the coverage of the policy." *Id.*, *citing* , *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279, 280 (Ky.1991)(internal citations omitted). The determination of whether a defense is required must be made at the outset of the litigation" by reference to the complaint and known facts. *Id*.

With regard to the actual policy language, it is axiomatic that words should be given their plain meaning. Terms of an insurance contract having no technical meaning in law "must be interpreted according to the usage of the average man and as they would be read and understood by him in light of the prevailing rule that

uncertainties and ambiguities must be resolved in favor of the insured." *Fryman v. Pilot Life Insurance Company*, 704 S.W.2d 205, 207 (Ky. 1986).

The relevant portion of the subject insurance policy provides:

> We will pay for "bodily" injury or "property damage" for which any "insured" becomes legally responsible because of an auto accident.

[Personal Auto Policy, Exhibit 5 to Docket No. 25].

NGIC contends that Mr. Burton's accident was not an "auto accident" as contemplated by its policy.

The term "auto accident" is not defined within the policy. As this term has no technical meaning, following the precedent cited above, the words must be applied or construed consistent with their ordinary usage. *Fryman v. Pilot Life Insurance Company*, 704 S.W.2d at 207.

It is clear to this Court that the "average person's" reading of the policy would negate coverage for the underlying lawsuit as Mr. Burton was not involved in an auto accident. Indeed, the automobile was not involved in the accident. Mr. Burton stepped out of the car, placed both feet on the ground, turned to shut the door, slipped. [Deposition of Alonzo Burton, pp. 34-36, Exhibit 1 to Docket No. 25]. To regard the incident as an auto accident would defy common sense.

In its motion, Plaintff points to a particularly colorful example of the

strained interpretation of "auto accident" from the Court of Appeals in Texas. *State Farm Mutual Insurance Company v. Peck*, 900 S.W.2d 910 (Tex. App. 1995). In *Peck*, the plaintiff was bitten by a dog while riding in his car to the veterinarian's office and suffered sever lacerations to his face as a result of the dog bite. Plaintiff sought coverage from his automobile insurance carrier. The *Peck* Court observed that the average person would not consider the biting incident in Peck's vehicle an "auto accident". Rather, the average person would simply say that Peck was bit by a dog while sitting in a car. *Id.* at 913.

Similarly, in the instant case, one would be hard pressed to state that Mr. Burton was in an "auto accident." Rather, he fell down a hill as a result of slipping on ice or snow. The automobile in question did not cause or contribute to the fall. Indeed, Mr. Burton had completely alighted from the vehicle . Falling after one has exited a parked car does not constitute an "auto accident." This is a slip-and-fall case, not an auto accident.

Based upon the record, the Court finds that there is no claim which potentially, possibly or might come within the coverage of the policy in question. As such , NGIC has no duty to defend or indemnify Ms. Felty in the aforementioned state Court action.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff National General

Insurance Company's Motion for Summary Judgment [Docket No. 25] be **SUSTAINED**. A judgment in favor of the Plaintiff will be entered contemporaneously herewith.

This March 2, 2007.

**Signed By:**
***Henry R Wilhoit Jr.***
**United States District Judge**